1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   EDUARDO MALDONADO,                    No.  2:17-cv-00478-TLN-GGH

12              Plaintiff,

13        v.                               **ORDER GRANTING IN PART AND
                                           DENYING IN PART DEFENDANTS'**
14   THE CITY OF RIPON, THE RIPON          **MOTION TO DISMISS**
     POLICE DEPARTMENT, EDWARD F.
15   ORMONDE, RICHARD FRANCIS,
     RAUL HERNANDEZ, and ANTHONY
16   DEMARINIS,

17              Defendants.

18

19        This matter is before the Court pursuant to Defendant City of Ripon ("the City"), Ripon

20   Police Department ("RPD"), Police Chief Edward F. Ormonde ("Chief Ormonde"), Richard

21   Francis ("Officer Francis"), Raul Hernandez ("Officer Hernandez"), and Anthony Demarinis's

22   ("Officer Demarinis") (collectively, "Defendants") Motion to Dismiss.  (ECF No. 7.)  Plaintiff

23   Eduardo Maldonado ("Plaintiff") opposes Defendants' Motion.  (ECF No. 22.)  Defendants filed

24   a Reply.  (ECF No. 23.)  After carefully considering the parties' briefing and for the reasons set

25   forth below, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion to

26   Dismiss.  (ECF No. 8).

27   ///

28   ///

                                             1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges in his First Amended Complaint ("FAC") that on July 15, 2015, Plaintiff and Plaintiff's friend were in a park in Ripon, California when Officer Francis and Officer Hernandez approached Plaintiff's friend about a noise complaint. (Pl's FAC, ECF No. 5 at 13.) Plaintiff alleges that Plaintiff was skateboarding nearby and when Plaintiff saw the confrontation, he approached the officers and said, "that's not right what are you doing[?]" (ECF No. 5 at 13.) Plaintiff further states that the officers, turning their attention to Plaintiff, asked him for identification. (ECF No. 5 at 13–14.) Plaintiff alleges that he asked the officers why they needed this information, and the officers responded by threatening to take Plaintiff to jail. (ECF No. 5 at 14.) Plaintiff further alleges that he stepped back, leading Officer Francis to grab Plaintiff's wrist while Officer Hernandez took out a taser gun and pointed it at Plaintiff. (ECF No. 5 at 14.) Plaintiff next alleges that Officer Francis handcuffed one of Plaintiff's arms and performed a tactical combat leg sweep. (ECF No. 5 at 14.) Plaintiff states that he then fell towards the cement ground face first and chipped a tooth. (ECF No. 5 at 14.) Plaintiff alleges Officer Francis pulled Plaintiff's handcuffed arm over a skateboarding rail, causing a laceration on Plaintiff's arm. (ECF No. 5 at 14.) Plaintiff further states Officer Hernandez proceeded to use the taser on Plaintiff in his lower back. (ECF No. 5 at 14.) Plaintiff alleges the officers pulled Plaintiff to standing and repeated the tactical combat sweep. (ECF No. 5 at 14.) Plaintiff next alleges Officer Demarinis arrived with a hardwood baton, which he used to strike Plaintiff's legs repeatedly. (ECF No. 5 at 14–15.) Plaintiff further alleges that he verbally and physically submitted to the officers prior to the force used against him. (ECF No. 5 at 15.) The officers ultimately took Plaintiff into custody. (ECF No. 5 at 15.)

On August 8, 2016, Plaintiff filed a civil action in San Joaquin County Superior Court. (ECF No. 5 at 12.) Defendants sought removal, and the case was removed to the United States District Court for the Eastern District of California. (ECF No. 5 at 12.) Upon removal, Plaintiff filed a First Amended Complaint ("FAC"), alleging violations of his First, Fourth, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 ("§ 1983"), assault/battery, false arrest/imprisonment, intentional infliction of emotional distress ("IIED"), and negligent hiring,

supervision, or retention.  (ECF No. 5 at 2.)  Plaintiff named the State of California, San Joaquin County, the City, RPD, Chief Ormonde, Officer Francis, Officer Hernandez, and Officer Demarinis as Defendants.  (ECF No. 5 at 1.)  The City, RPD, Chief Ormonde, Officer Francis, Officer Hernandez, and Officer Demarinis filed the instant Motion to Dismiss and Memorandum pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  (Defs' Mot. to Dismiss, ECF. No. 7; Defs' Memorandum of Points and Authorities in Support of Mot. to Dismiss, ECF No. 8.)

## II.    STANDARD OF LAW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations."  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

///

4

### III. ANALYSIS

Defendants request the Court dismiss Plaintiff's Complaint in its entirety. (ECF No. 8.) Defendants argue: (1) that the FAC is not specific enough, in that it does not clearly identify the causes of actions or which claims implicate which defendant (ECF No. 8 at 11–12); (2) that claims against RPD and Chief Ormonde are duplicative because the City is also a defendant (ECF No. 8 at 12, 14); (3) that Plaintiff's Fifth and Fourteenth Amendment due process claims are preempted by Plaintiff's Fourth Amendment claim (ECF No. 8 at 17); (4) that Plaintiff's § 1983 claims against the City should be dismissed in full because Plaintiff fails to establish liability under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) (ECF No. 8 at 15–17); and (5) that Plaintiff failed to state a claim for his assault and battery, false arrest and imprisonment, IIED, and negligent hiring, supervision, and retention claims. (ECF No. 8 at 18–22).

#### A. Specificity

As a threshold matter, Defendants argue the Court should dismiss the FAC as a whole for two reasons. First, Defendants argue that the FAC does not identify the causes of action. (ECF No. 8 at 11.) Second, Defendants argue the FAC does not clearly delineate which claims implicate which Defendant. (ECF No. 8 at 11–12.) The Court finds no merit in Defendants' first argument, as Plaintiff clearly outlines his claims in the FAC. (*See* ECF No. 5 at 2–3.)

Defendants next argue that the FAC does not delineate which claims implicate which Defendant, leaving Defendants with the "impossible task" of responding. (ECF No. 8 at 11–12.) Plaintiff argues that Defendants understood the allegations sufficiently to respond in their Motion to Dismiss, and thus their argument has no merit. (Pl's Opp'n to Def's Mot. to Dismiss, ECF No. 22 ¶ 5.) Plaintiff also argues that Defendants conceded to understanding the allegations in their Motion to Dismiss when they stated that, "Plaintiff's FAC alleges that Chief Ormonde, the City, and the Police Department are vicariously liable for the actions of the [o]fficers as derivative of the direct claim against the [o]fficers." (ECF No. 22 ¶ 5; *see also* ECF No. 8 at 18.)

Pleadings must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Pleading rules ensure defendants receive fair notice. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

Courts dismiss unclear statements that do not allow defendants to prepare responsive pleadings. *See e.g.*, *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) ("Prolix, confusing complaints such as the ones plaintiffs filed . . . impose unfair burdens on litigants and judges.  As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiffs filed, and must prepare outlines to determine who is being sued for what."); *Schiff v. Barrett*, No. C 10-1051 PJH, 2010 WL 5153217, at *1 (N.D. Cal. Dec. 13, 2010) (Dismissing complaint when it was "so long and contain[ed] so many allegations that [we]re irrelevant to plaintiff's claim of retaliation, harassment, and discrimination . . . that it appear[ed] to the court that defendants would have a difficult time composing a responsive pleading.").  Courts have drawn a line between "prolix, confusing complaints" warranting dismissal and complaints that are unnecessarily long but still put defendants on notice.  *McHenry*, 84 F.3d at 1179–80 (affirming the district court's dismissal of a "prolix, confusing complaint" due to the difficulty of responding and the burden such complaints place on judges and litigants); *but see Hearns v. San Bernardino Police Dep't.*, 530 F.3d 1124, 1132 (9th Cir. 2008) (vacating a dismissal order because the complaint, though longer than necessary, was "logically organized" and presented "enumerated legal claims, each of which list[ed] the liable Defendants and legal basis therefor"); *Johnson v. Napa Valley Wine Train, Inc.*, No. 15-cv-04515-TEH, 2016 WL 493229, *4 (N.D. Cal. Feb. 9, 2016) ("Defendants' argument for a more definite statement demonstrates that they understand the nature of each claim, and therefore how to defend against it.").

Plaintiff's 59-page FAC (ECF No. 5) contains excessive detail, primarily in the form of legal analysis and conclusory statements.  But unlike the complaint in *McHenry*, the FAC does not place an impossible burden on Defendants.  *See McHenry*, 84 F.3d at 1175 (noting the impossibility of determining which defendant was implicated by each claim).  Indeed, Defendants fully responded to Plaintiff's allegations.  (*See* ECF No. 8.)  In their Motion to Dismiss, Defendants assume "that each cause of action applies to each of the Ripon Defendants."[1]  (ECF

---

[1] Plaintiff states that all defendants are on notice for "every tort in this complaint," and specifically names each of the defendants.  (ECF No. 5 at 53.)  Further, Plaintiff asserts that each of the officers and the entities are liable for the § 1983 claim.  (ECF No. 5 at 18.)

No. 8 at 8.) Defendants proceed to list each Defendant in subheadings corresponding to each claim and analyze the claims as to all Defendants. Although the FAC alternates between referring to Defendants individually and collectively, the FAC as a whole "can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) (finding that referring to defendants collectively does not warrant dismissal when defendants are otherwise on notice); *Morse v. Cty. of Merced*, No. 116-cv-00142-DAD-SKO, 2016 WL 3254034, *6 (E.D. Cal. June 13, 2016) ("[D]efendants have presented no persuasive argument that the collective reference to the defendants at various points in the complaint renders it inadequate."). While the Court agrees with Defendants that the FAC is verbose, it does not amount to a "prolix, confusing complaint[]" as identified in *McHenry*. 84 F.3d at 1179. Because Defendants did in fact respond to Plaintiffs enumerated claims, the Court finds the FAC delineates the claims and Defendants sufficiently to put Defendants on fair notice. Accordingly, Defendants' Motion to Dismiss the FAC for lack of specificity is denied.[2]

B.     Duplicative Defendants

Defendants argue that the claims against RPD and Chief Ormonde are duplicative because the City is also a defendant. (ECF No. 8 at 12, 14.) Plaintiff asserts that RPD is not a duplicative defendant. (ECF. No 22 at 3.) Plaintiff responds to Defendants' argument that Chief Ormonde is a duplicative defendant only by stating in a subheading that Chief Ormonde is liable as an individual for the § 1983 claim. (ECF No. 22 at 4.) The Court addresses Defendants' argument as it applies to both RPD and Chief Ormonde.

i.     RPD

Defendants first argue that claims against RPD are duplicative because the City is also a defendant. (ECF No. 8 at 12.) To claim civil rights violations pursuant to 42 U.S.C. § 1983, there must be a "person" acting under the color of state law. 42 U.S.C. § 1983. Governmental entities, such as counties or municipalities, are considered "persons" within the meaning of § 1983. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 70 (1989); *Monell v. Dep't of Soc.*

---

[2]     Though dismissal is not warranted for lack of specificity, Defendants' Motion to Dismiss will be granted in part with leave to amend for other reasons set forth below. If Plaintiff chooses to amend, the Court directs him to list the factual allegations and legal claims as they apply to each Defendant in a "simple, concise, and direct" manner.

*Servs. of City of New York*, 436 U.S. 658, 690 (1978); *Cty. of Los Angeles v. Superior Court*, 68 Cal. App. 4th 1166, 1171 (1998).  However, municipal departments, including police departments, are generally not considered "persons" within the meaning of Section 1983.  *United States v. Kama*, 394 F.3d 1236, 1239–40 (9th Cir. 2005) (Ferguson, J., concurring) (explaining that municipal police departments are generally not considered "persons" within the meaning of 42 U.S.C. § 1983); *Sanders v. Aranas*, 1:06-CV-1574AWISMS, 2008 WL 268972, at *3 (E.D. Cal. Jan. 29, 2008) ("Fresno Police Department is not a proper defendant because it is a sub-division of the City of Fresno"); *Brockmeier v. Solano Cty. Sheriff's Dep't.*, 2006 WL 3760276, at *4 (E.D. Cal. Dec. 18, 2006) (finding that sheriff's department is a municipal department and not a proper defendant for purposes of plaintiff's § 1983 claims); *Vance v. Cty. of Santa Clara*, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996) ("Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality") (quoting *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993)).

Courts routinely dismiss police departments as duplicative when the municipality is also a defendant to the same claims, and when the claims arise from the same facts as to both defendants.  *See, e.g.*, *Herrera v. City of Sacramento*, No. 2:13-cv-00456-JAM-AC, 2013 WL 3992497, *2 (E.D. Cal. Aug. 2, 2013) ("Because the Sacramento Police Department is a department of the City, it is redundant to name both."); *Wade v. Fresno Police Dep't.*, No. Civ. 1:09–cv–0599 AWI DLB, 2010 WL 2353525, at *4 (E.D. Cal. June 9, 2010) (holding a police department is not a "person" under § 1983); *Brouwer v. City of Manteca*, No. 107-CV-1362 AWI DLB, 2008 WL 2825099, at *3 (E.D. Cal. July 21, 2008) ("Because Defendant Manteca Police Department is a subdivision of Defendant City of Manteca, it is an unnecessary duplicative Defendant, and it will be dismissed."); *Daniel v. City of Glendale*, No. CV14–3864 VAP (AJW), 2015 WL 5446924, at *3 (C.D. Cal. Mar. 19, 2015) (dismissing § 1983 and state law claims against a police department as redundant to the claims against the city).  When a city and municipal department engage in distinct conduct, claims against both the city and municipal department are not duplicative because the claims do not arise from the same set of facts.  *See Daniel*, 2015 WL 5446924, at *3.

8

Both parties acknowledge that RPD is a department of the City. (ECF No. 5 at 55 (stating that the City "has a duty to control, supervise and remedy deficiencies in the" RPD); ECF No. 8 at 13.) However, Plaintiff does not argue that the basis of RPD's liability is distinct from that of the City, nor does Plaintiff provide any factual allegations that differentiate the two Defendants. Due to the lack of any factual distinction between the claims, Defendants' motion to dismiss all claims against RPD as duplicative to claims against the City is granted with leave to amend.

*ii.*     *Chief Ormonde*

Defendants next argue that claims against Chief Ormonde are duplicative because the City is a defendant. (ECF No. 8 at 14.) A public official may be sued in his or her official or individual capacity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Personal-capacity suits allege that an official personally deprived the plaintiff of a federal right under the color of state law. *Id.* at 165. Official-capacity suits, on the other hand, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n.55 (1978). Courts dismiss official-capacity suits as redundant when the municipality is also named as a defendant to the same claims arising out of the same facts. *See e.g.*, *Herrera*, 2013 WL 3992497, at *3 (dismissing with prejudice § 1983 and state law claims against a police chief in his official capacity as duplicative to the claims against the municipality); *Orr v. Cty. of Sacramento*, No. CIV. S-13-0839 LKK, 2013 WL 4519637, at *12 (E.D. Cal. Aug. 26, 2013); *Luke v. Abbott*, 954 F. Supp. 202, 204 (C.D. Cal. 1997) ("A plaintiff cannot elect which of the defendant formats to use. If both are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant.").

Throughout the FAC, Plaintiff states or implies that Chief Ormonde is liable in his individual capacity based on his authority to supervise, failure to train, and negligent hiring, supervision, and retention of the officers. (ECF No. 5 at 16, 18, 54.) These allegations are also nearly identical to those against the City and RPD. (*See* ECF No. 5 at 18, 55.) Moreover, Plaintiff repeatedly groups the City, RPD, and Chief Ormonde together for all claims. (ECF No. 5 at 23 ("[But for] the concurrent training and supervisory failure of . . . the City of Ripon, the

Ripon Police Department, and Police Chief Edward F. Ormonde, the injuries to the Plaintiff would not have occurred.")

Plaintiff fails to allege that Chief Ormonde's individual conduct differs from that of the City and RPD. Thus, the Court finds that Plaintiff alleged an official-capacity suit against Chief Ormonde which warrants dismissal as duplicative of claims against the City. Even if the Court were to accept Plaintiff's position[3] that this is a personal-capacity suit against Chief Ormonde, Plaintiff fails to allege any facts about Chief Ormonde's personal involvement in the purported violations by the officers. The Court finds that Plaintiff fails to provide sufficient factual allegations to state a claim against Chief Ormonde in his personal capacity. For these reasons, Defendants' Motion to Dismiss claims against Chief Ormonde is granted with leave to amend.

C.  Section 1983

Plaintiff brings four separate constitutional claims under §1983, alleging Defendants violated his First, Fourth, Fifth, and Fourteenth Amendment rights. An individual may bring a claim under 42 U.S.C. § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege two elements: "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Though alleged violations of § 1983 may implicate more than one constitutional amendment, courts dismiss broader claims when a narrower, more explicit amendment already governs the standards of official conduct at issue. *See Picray v. Sealock*, 138 F.3d 767, 770 (9th Cir. 1998) ("Where an amendment 'provides an explicit textual source of constitutional protection against a particular sort of government behavior,' it is that Amendment, not the guarantee of due process, that 'must be the guide for analyzing' the complaint.") (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). In other words, specific provisions of the constitution preempt broader provisions when dealing with the same conduct. *Id.*

---

[3]     Plaintiff alleges that Chief Ormonde is liable in his individual capacity. (*See* ECF No. 5 at 18, 54.) ("Police Chief Edward F. Ormonde is also liable in his individual capacity under section 1983 . . .".)

Furthermore, municipalities cannot be held liable under § 1983 for unconstitutional torts of their employees based solely on respondeat superior. *See Monell*, 436 U.S. at 693–94 (explaining that respondeat superior "impos[es] liability on an employer for the torts of an employee when the sole nexus between the employer and the tort is the fact of the employer-employee relationship"). Pursuant to *Monell*, a municipality is only liable under § 1983 when its own illegal acts are a "moving force" in the constitutional violation. *Id.* at 694.

Defendants move to dismiss the Fifth and Fourteenth Amendment due process claims, arguing that Plaintiff's more specific Fourth Amendment claim preempts the broader due process claims arising from Plaintiff's arrest. (ECF No. 8 at 17.) Defendants also move to dismiss the § 1983 claims against the City stating Plaintiff failed to establish *Monell* liability. (ECF No. 8 at 16–17.)

i.    *Preemption*

Defendants move to dismiss Plaintiff's Fifth and Fourteenth Amendment due process claims, arguing that Plaintiff's Fourth Amendment claim preempts those broader claims. (ECF No. 8 at 17.) Plaintiff contends that "because the court can reasonably infer the Plaintiff's Fourth Amendment liberty interests were violated, the court can reasonably infer the Plaintiff's due process rights have been violated as alleged." (ECF No. 22 ¶ 15.)

The same official conduct may give rise to more than one constitutional claim, but a constitutional provision that gives specific textual protection preempts a broader due process claim. *Picray*, 138 F.3d at 770 (holding that a constitutional challenge to an arrest must be analyzed under the Fourth Amendment rather than due process). Each of Plaintiff's constitutional claims stem from the same conduct. (*See* ECF No. 5 at 24–41.) Indeed, Plaintiff's factual allegations to support his due process claims are nearly identical to the factual allegations for his First and Fourth Amendment claims. (ECF No. 5 at 34–35.) Plaintiff appears to allege that because the officers violated his First and Fourth Amendment rights during the arrest, the officers consequently violated his due process rights as well. (ECF No. 5 at 34–35.) Plaintiff's due process claims arising from his arrest are indistinguishable from his more specific Fourth Amendment claim. *Picray*, 138 F.3d at 770. Because the Fourth Amendment already governs

11

the standards for official conduct in the arrest context, Plaintiff's Fourth Amendment claim preempts the broader Fifth and Fourteenth Amendment due process claims. *Id.* Thus, the Court dismisses Plaintiff's Fifth and Fourteenth Amendment due process claims with prejudice.

### ii.    The City's *Monell Liability*

Defendants argue that Plaintiff fails to allege the City is liable under § 1983 for independent illegal acts as required by *Monell*. (ECF No. 8 at 15–16.) Defendants also argue that the § 1983 claim against the City fails because respondeat superior cannot be the basis for liability under § 1983. (ECF No. 8 at 14–15.) Plaintiff responds that he sufficiently stated a *Monell* claim against the City, and that the City's § 1983 liability is not solely premised on respondeat superior, but also negligent hiring, supervision, and retention. (ECF No. 22 ¶¶ 10, 11–12.)

Under *Monell v. Dep't of Soc. Servs. of City of New York*, a municipal government is liable as a "person" under Section 1983. 436 U.S. 658, 690 (1978). However, municipalities cannot be held vicariously liable for the unconstitutional acts of their employees based solely on a respondeat superior theory. *Id.* at 691. Rather, municipalities are only responsible for "their *own* illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). Specifically, a municipality may be held liable only where it individually causes a constitutional violation through "execution of a government's policy or custom, whether by its law-makers or by those whose edicts or acts may fairly be said to represent" them. *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1170, 1185 (E.D. Cal. 2010) (quoting *Rendon v. City of Fresno*, No. 1:06-CV-01851OWWSMS, 2007 WL 2302340, at *4 (E.D. Cal. Aug. 8, 2007).

A plaintiff may premise municipal liability on three grounds. *See Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), o*verruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). First, plaintiffs may "establish municipal liability by demonstrating that . . . the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (internal quotation marks omitted). Second, plaintiffs may demonstrate that omissions or failures to act amount to a local government policy

of deliberate indifference to constitutional rights. *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *see also Clouthier*, 591 F.3d at 1249. Third, plaintiffs "may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992);

A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008) (quoting *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir.2002)). A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation marks omitted). In light of *Iqbal*, the federal pleading rules for municipal liability claims must identify the policy/custom, explain how the specific policy/custom was deficient, how the policy/custom caused plaintiff harm, and how the policy/custom amounted to deliberate indifference (i.e. how the deficiency was obvious and the constitutional injury was likely to occur). *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009).

### a.    Longstanding custom or policy

To sufficiently allege that the government entity adopted an unconstitutional custom or policy, a plaintiff must prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom, which constitutes the standard operating procedure of the local governmental entity. *Gillette*, 979 F.2d at 1346. Plaintiff fails to allege any facts that would support his allegation that the City has a policy or custom of failing to adequately train, supervise, and discipline police officers. Instead, Plaintiff alleges merely that the incident at issue shows that the officers were not properly trained and supervised. (ECF No. 5 at 22–23.) One instance alone cannot support the existence of a policy. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying

13

out policy."). Moreover, no factual allegation in the Complaint supports Plaintiff's assertion that the City was the "moving force" behind Miller's conduct. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (the entity's "policy or custom" must have played a part in the violation of federal law). Consequently, Plaintiff's claims lack any factual allegations that would separate them from the formulaic recitation of the elements of the claim. *Twombly*, 550 U.S. at 555.

b. Failure to hire, train, or supervise

Complete inadequacy of training may amount to a policy giving rise to *Monell* liability. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *City of Canton*, 489 U.S. at 391. Consequently, a claim for inadequate training under *Monell* is only sufficient "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact," and that deliberate indifference was the moving force of the violation of the plaintiff's federally protected right. *Id.* at 388–89. "Accordingly, the City's policymakers must have been 'on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights.'" *Rabinovitz v. City of Los Angeles*, 287 F. Supp. 3d 933, 966 (C.D. Cal. 2018) (quoting *Connick*, 563 U.S. at 61).

For Plaintiff to set forth a claim alleging a failure to train, he must demonstrate either a "pattern of similar constitutional violations by untrained employees" or they must show that the municipality "has failed to train its employees to handle recurring situations presenting an obvious potential for" constitutional violations. *Rabinovitz*, 287 F. Supp. 3d at 966. Plaintiff does not allege recurring situations warranting training. Further, Plaintiff fails to provide factual allegations that the City was deliberately indifferent to a need for training. Simply alleging that the City's training practices are deficient and inadequate is conclusory and does not support a plausible claim. (ECF No. 5 at 22–23.)

c. Ratification

A plaintiff may claim *Monell* liability where an "official with final policy-making authority ratifie[s] a subordinate's unconstitutional decision or action and the basis for it."

*Gillette*, 979 F.2d at 1346–47.  Ratification "and thus the existence of a *de facto* policy or custom, can be shown by a municipality's post-event conduct, including its conduct in an investigation of the incident." *Dorger v. City of Napa*, No. 12-CV-440 YGR, 2012 WL 3791447, at *5 (N.D. Cal. Aug. 31, 2012).  However, a policymaker's "knowledge of an unconstitutional act does not, by itself, constitute ratification." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).  Moreover, "a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval."  *Id.*  Rather, ratification requires the authorized policymaker to make a "conscious, affirmative choice."  *Gillette*, 979 F.2d at 1347.

In the instant case, Plaintiff fails to allege any facts that the City ratified the alleged violations or even had knowledge that the conduct occurred.

The Court finds that Plaintiff does not sufficiently allege *Monell* liability against the City for an unconstitutional policy or custom, failure to train its officers, or ratification.  Accordingly, Plaintiff's § 1983 claims against the City are dismissed with leave to amend.

>    D.    Assault/Battery

Defendant argues that Plaintiff's assault and battery claims must be dismissed for two reasons, (1) Plaintiff does not allege the officers used unreasonable force, and (2) the respondeat superior claim against the City should be dismissed if the direct claims against the officers fail. (ECF No. 8 at 18.)

>    *i.    Direct Claims Against the Officers*

Defendants argue that Plaintiff fails to state a claim for assault and battery because Plaintiff does not allege the officers used unreasonable force.  (ECF No. 8 at 18.)  Plaintiff argues that the FAC contains sufficient factual allegations to state a claim for assault and battery.  (ECF No. 22 ¶ 17–22.)

"The elements of civil assault are: demonstration of an unlawful intent by one person to inflict immediate injury on the person of another . . . .  The tort of assault is complete when the anticipation of harm occurs." *Martinez v. Garza*, No. 1:09-cv-0899-LJO-DLB, 2011 WL 23670, at *22, (E.D. Cal. Jan. 4, 2011).  A civil battery claim requires that (1) defendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did

not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss, or harm to plaintiff. *Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495 (2004). "[A] prima facie battery [by a police officer] is not established unless and until plaintiff proves unreasonable force was used." *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273 (1998).

The parties only dispute the unreasonable force element of the battery. (ECF No. 8 at 18; ECF No. 22 ¶ 17–22.) Plaintiff has clearly alleged that the officers used force. Plaintiff alleges Officer Francis and Officer Hernandez approached him and threw his skateboard out of reach. (ECF No. 5 at 13.) Plaintiff alleges that Officer Francis grabbed Plaintiff's wrist while Officer Hernandez took out his taser gun and pointed it at Plaintiff. (ECF No. 5 at 14.) Plaintiff further alleges that Officer Francis handcuffed one of Plaintiff's hands and pushed him onto the ground, causing Plaintiff to fall on his face and chip a tooth. (ECF No. 5 at 14.) Plaintiff alleges that, Officer Francis jerked Plaintiff's arm over a skateboard rail, which lacerated Plaintiff's wrist. (ECF No. 5 at 14.) Plaintiff alleges that Officer Hernandez then pulled out the taser gun and used it on Plaintiff's lower back. (ECF No. 5 at 14.) Plaintiff alleges that the officers pulled Plaintiff up off the ground, and then attempted to trip him again. (ECF No. 5 at 14.) Plaintiff alleges that Officer Demarinis struck Plaintiff's legs repeatedly with a hardwood baton. (ECF No. 5 at 14–15.) Plaintiff alleges he verbally and physically submitted to officers during the altercation, but the officers continued to use "excessive force" against him. (ECF No. 5 at 15.)

In determining whether the officers' use of force was reasonable, the Court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Plaintiff alleges he was not armed or dangerous, he was not actively resisting arrest, and he had not committed a crime. (ECF No. 5 at 13–15). Taking Plaintiff's allegations as true, Plaintiff sufficiently pleaded that the officers' use of force was unreasonable as Plaintiff was not committing a severe crime, was not resisting arrest, and posed no immediate threat to the safety of the officers. *See Graham*, 490 U.S. at 396. Therefore, the Court finds that Plaintiff sufficiently pleaded that the officers used unreasonable force during the arrest. For these reasons, Defendants' motion to dismiss Plaintiff's assault and

16

battery claim is denied.

ii.     *Respondeat Superior Claim Against the City*

Plaintiff further alleges that the City is liable for assault and battery under a theory of respondeat superior because the officers acted within the scope of their employment. (ECF No. 5 at 45–46.) Respondeat superior imposes liability on an employer for the torts of an employee committed during the scope of their employment. *Monell*, 436 U.S. at 693–94. Notably, Defendants do not argue that the officers acted outside the scope of their employment. Defendants argue only that the respondeat superior claim should be dismissed if the direct claim against the officers fails. (ECF No. 8 at 18.)

"For the doctrine of respondeat superior to apply, the plaintiff must prove that the employee's tortious conduct was committed within the scope of employment." *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 209 (1991). Under California law, an employee acts within the scope of employment when "the risk was one 'that may fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by the employer." *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 968 (1986) (quoting *Rodgers v. Kemper Constr. Co.*, 50 Cal. App. 3d 608, 619 (1975)).

Further, Defendants do not claim the officers were acting outside of their employment, and an arrest is an activity typical of law enforcement. Thus, Plaintiff successfully pleaded a respondeat superior claim against the City for the alleged assault and battery by the officers. Accordingly, Defendants' motion to dismiss on this basis is denied.

E.     False Arrest/Imprisonment

Defendants argue that Plaintiff fails to state a claim for false imprisonment because Plaintiff does not sufficiently allege that his arrest was unlawful. (ECF No. 8 at 19.) Plaintiff responds that the officers arrested him for "asserting his First Amendment right to free speech and consequently the arrest was unlawful." (ECF No. 22 ¶ 23.)

A false imprisonment claim in an arrest context arises upon "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000).

In the arrest context, an officer acts "without lawful privilege" either when he arrests without probable cause, or when he maliciously arrests another by personally serving an arrest warrant issued solely on deliberately falsified information. *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1205, n.4 (9th Cir. 2003).

The parties only dispute the lawful privilege prong. (ECF No. 8 at 19; ECF No. 22 ¶ 23.) Plaintiff alleges that the officers arrested him without probable cause. (ECF No. 5 at 48.) Moreover, Plaintiff alleges that the officers unlawfully arrested him for "lawful expression of speech." (ECF No. 5 at 48.) But Plaintiff also admits that the officers found "lawful reasons" for the arrest, such as failure to wear safety equipment, obstruction, and battery against a peace officer. (ECF No. 5 at 27, 48.) In other words, Plaintiff concedes that probable cause existed for the arrest. Whether that probable cause was the true motivation for his arrest is irrelevant in a Fourth Amendment reasonableness analysis. *Whren v. United States*, 517 U.S. 806, 813 (1996) (finding that the subjective, pretextual motivations of an arresting officer do not negate the legality of an arrest supported by probable cause). Because Plaintiff admits probable cause existed for the arrest, he has not pleaded the requisite elements. *See Blaxland*, 323 F.3d at 1205. Accordingly, Plaintiff does not sufficiently state a claim for false imprisonment.

Defendants also move to dismiss the respondeat superior claim against the City as it is derivative of the false imprisonment claim against the officers. (ECF No. 8 at 20.) Insofar as Plaintiff's respondeat superior claim is derivative of the direct claims against the officers, the Court also finds Plaintiff fails to state a false imprisonment claim against the City. Therefore, Defendants' motion to dismiss the false imprisonment claim is granted with leave to amend.

F.    IIED

Defendant argues that Plaintiff's IIED claims must be dismissed for two reasons, (1) Plaintiff does not allege facts to suggest the officers' conduct was extreme or outrageous, and (2) Plaintiff's respondeat superior claim should be dismissed if the direct claim against the officers fails. (ECF No. 8 at 18, 20–21.)

    *i.  Direct Claims Against the Officers*

Defendants argue that Plaintiff fails to state a claim for IIED because the FAC does not

18

allege facts to suggest the officers' conduct was extreme or outrageous. (ECF No. 8 at 20–21.) Plaintiff argues that the factual allegations within the FAC sufficiently state that the officers' conduct was extreme or outrageous. (ECF No. 22 ¶¶ 29–30.)

An IIED claim requires (1) extreme and outrageous conduct by the defendant, (2) with the intention of causing, or reckless disregard of the probability of causing emotional distress, (3) the plaintiff's suffering severe or extreme emotional distress, and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct. *Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996) (citing *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991)).

The parties only dispute the extreme or outrageous conduct element. (ECF No. 8 at 20–21; ECF No. 22 ¶ 29–30.) Plaintiff alleges the officers' conduct was extreme and outrageous because they allegedly used a baton and a 50,000-volt taser, chipped Plaintiff's tooth, and bent Plaintiff over a skateboard rail, causing a laceration to his arm. (ECF No. 5 at 50–51.) Further, the officers allegedly picked up Plaintiff's chipped tooth and denied having it. (ECF No. 5 at 50–51.) Finally, Plaintiff alleges the officers took Plaintiff's iPod and returned it at an extremely cold temperature. (ECF No. 5 at 50–51.) Plaintiff alleges that the officers' conduct caused him severe emotional distress in the form of mental anguish and humiliation. (ECF No. 5 at 52.)

In *Hillblom v. County of Fresno*, 539 F. Supp. 2d 1192, 1210–11 (E.D. Cal. 2008), the plaintiffs brought an IIED claim after witnessing officers enter their home, throw their relative against a wall, tear away his insulin pump, and lock him in a patrol car. The court found that the officers' conduct, though directed at someone other than the plaintiffs, was sufficiently egregious to state a claim for IIED. *Id.* at 1210–11. Here, the officers allegedly struck Plaintiff with a baton, used a 50,000-volt taser on him, repeatedly attempted to trip him, and pushed him face first to the ground, chipping his tooth and causing injury. (ECF No. 5 at 50–51.) Plaintiff further alleges he was not a threat to the officers during the excessive force. (ECF No. 5 at 15.) The officers' conduct in the instant case is comparable to *Hillblom*. *Id.* But unlike *Hillbolm,* Plaintiff was not merely a bystander. *Id.* Plaintiff was the direct subject of the alleged violence. Thus, Plaintiff pleaded sufficient factual allegations that the officers' conduct was extreme or outrageous. For these reasons, Defendants' motion to dismiss Plaintiff's IIED claim is denied.

*ii.     Respondeat Superior Claims Against the City*

Plaintiff alleges that the City is liable for IIED under a theory of respondeat superior because the officers were acting within the scope of employment.  (ECF No. 5 at 53.)  Defendants do not argue that the officers acted outside the scope of their employment.  Defendants argue only that the respondeat superior claim should be dismissed if the direct claim against the officers fails.  (ECF No. 8 at 18.)

Defendants do not argue the officers were acting outside of their employment, and an arrest is an activity typical of law enforcement.  Accordingly, Defendants motion to dismiss Plaintiff's respondeat superior claims against the City for IIED by the officers is denied.

G.     Negligent Hiring, Supervision, or Retention

Defendants argue that Plaintiff fails to state a claim for negligent hiring, supervision, or retention because there are no facts to suggest the officers posed any risk such that the City knew or should have known that a hazard existed.  (ECF No. 8 at 21–22.)  Plaintiff argues that the City ratifies the officers' excessive force through acquiescence and creates an unreasonable risk by retaining the officers.  (ECF No. 22 ¶ 31.)  Plaintiff further alleges that the officers pose a risk based on their "prompt and instinctual reflex to use unreasonable force in the face of lawful activity."  (ECF No. 22 ¶ 32.)

An employer may be held directly liable for the behavior of an unfit employee where the employer was negligent in the hiring, training, supervising, or retaining of that employee.  *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (2006).  Negligence liability is imposed upon the employer if it knew or should have known that hiring the employee created a particular risk or hazard and that particular harm then materializes.  *Id.*  Liability may be imposed "either on the basis of . . . action — for example, the negligent hiring of an agent — or . . . inaction—for example, the failure to provide adequate supervision of the agent's work."  *Far West Financial Corp. v. D & S Co.*, 46 Cal. 3d 796, 812 (1988).

Plaintiff argues in his Opposition that the City's negligence stems from retention of the officers after the incident with Plaintiff.  (ECF No. 22 ¶ 31–32.)  In the FAC, Plaintiff focuses on the City's negligence before the incident with Plaintiff, arguing that the City failed to hire,

supervise, or retain agents fit for the job. (ECF No. 5 at 56.) According to Plaintiff, it is "fair to say [the officers] were negligently hired, supervised, and/or retained" based on their "prompt and instinctual reflex to use unreasonable force" during the incident with Plaintiff. (ECF No. 5 at 56.) Plaintiff does not allege any facts to suggest the City knew or should have known the officers posed a risk at any time. *See Cabral v. City of Glenn*, 624 F. Supp. 2d 1184, 1196 (E.D. Cal. 2009) ("Plaintiff has wholly failed to allege any facts indicating City is liable for negligently hiring Officer Dahl.") Instead, Plaintiff provides only bare legal conclusions, revolving around a single incident. Bare legal conclusions are insufficient to state a claim under *Twombly*, 550 U.S. at 555. Therefore, Defendants' motion to dismiss the negligent, hiring, or supervision claim is granted with leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1.  Defendants' Motion to Dismiss the FAC for lack of specificity is DENIED;

2.  Defendants' Motion to Dismiss all claims against RPD is GRANTED with leave to amend;

3.  Defendants' Motion to Dismiss all claims against Chief Ormonde is GRANTED with leave to amend;

4.  Defendants' Motion to Dismiss Plaintiff's Fifth and Fourteenth Amendment due process claims is GRANTED with prejudice;

5.  Defendants' Motion to Dismiss Plaintiff's § 1983 claims against the City is GRANTED with leave to amend;

6.  Defendants' Motion to Dismiss Plaintiff's assault and battery claim is DENIED;

7.  Defendants' Motion to Dismiss Plaintiff's false imprisonment claim is GRANTED with leave to amend;

8.  Defendants' Motion to Dismiss Plaintiff's IIED claim is DENIED; and

9.  Defendants' Motion to Dismiss Plaintiff's negligent, hiring, or supervision claim is GRANTED with leave to amend.

Plaintiff is granted thirty (30) days from the date of this Order to file a Second amended complaint. Defendants are afforded twenty-one (21) days from the date Plaintiff files an amended complaint to answer the complaint.

IT IS SO ORDERED.

Dated: October 23, 2018

Troy L. Nunley
United States District Judge